Next case is Richards v. Marshall Good morning. Good morning. May it please the court. My name is Vince Coliani Jr. I represent the appellants in this case. Perhaps we would, you know, we ought to start with the jurisdictional issue as to whether you can take an appeal from a denial of summary judgment when posed a verdict. And I gather the dispute as to whether this is a purely legal issue or whether there are factual considerations as well. Correct, Your Honor. And that was my plan to start with the special jurisdictional issue and then go to the merits. You asked for additional briefing on the issue and the question is can this court review the denial of the summary judgment after a full trial on the merits? Your request cited Ortiz v. Jordan, which is a Supreme Court case involving a qualified immunity defense on the part of the prison officials. The Supreme Court reversed the Sixth Circuit, which had reviewed the denial of a summary judgment on qualified immunity grounds. The pre-Supreme Court said that was improper because there had been a full trial on the merits. And the defense in that case, a qualified immunity defense, involved a question of fact. Not just a question of whether the law was clearly established at the time, but whether the prison officials knew their conduct violated the law. So the Supreme Court explained So why aren't there factual issues in this particular matter? This case, Your Honor, is entirely different than Ortiz. And Ortiz did not create a blanket prohibition reviewing summary judgment denials after judgment on the merits. This case is a collateral estoppel summary judgment motion that simply turned on whether the judgment in a prior identical case that had been consolidated for trial and severed and tried before our case was conclusive on the issue of negligence and general causation in our case. There was no reference to the record in our motion, nor did the court cite the record. The factual developments at trial had nothing whatsoever to do with the court's ruling denying our motion on collateral estoppel grounds. You're only looking at general. You're not specific. Is that right? Causation? Right. We were looking at summary judgment. You're only looking for collateral estoppel or summary judgment as to general causation? Yes, Your Honor, as to two issues, breach of the duty of care or negligence, which the jury found in the earlier case against defendants, and general causation, whether more or less. Before we get to that, though, I'd like to start at first things. Well, perhaps second things in this case. Jurisdiction is first things. But we also, as an appellate panel, start with whatever our standard of review is here. And I'm troubled a bit by some of the language used and by what may be, may be, the conflation of two standards of review. Plenary, which ordinarily applies with a motion for summary judgment. But the fact that what this is really about is, as you've indicated, application of non-mutual offensive collateral estoppel, which is a discretionary matter, and therefore an issue subject to abuse of discretion. We're really talking about abuse of discretion here, aren't we? I mean, first of all, you could have called that motion anything. You could have called it a motion in limine, if you'd wanted to, just to rule. So we're not really talking about summary judgment, at least a summary judgment or partial summary judgment subject to plenary review. We're talking about the determination of collateral estoppel. And this is a purely abusive discretion standard. And, in fact, you can see that there is broad discretion. Is this a softball question? I don't want to reflexively disagree with you. No, it was intended for clarification coming out of the gate. Sure. Doesn't that put you with a pretty big burden? It does. And you're right. With respect to non-mutual offensive collateral estoppel, the standard of review is abuse of discretion. If we're talking about a typical collateral estoppel case or defensive collateral estoppel, it's plenary. So there is an abuse of discretion standard here. I concede that. However, if there is ever a case that meets that standard, it's this one. Oh, how? Yes, I agree. How? To make it that clear, how could that be? And especially looking at Parkland and the factors, how could that be this clear? The judge first issued one ruling after our initial motion for summary judgment and found we met all the elements of non-mutual of collateral estoppel. There was an identical issue in the Smith case. I'm not sure whether it was. Let's stop right there. I'm not sure whether it was identical. Isn't it your obligation as the party seeking to invoke collateral estoppel? Collateral estoppel, not claim preclusion. Collateral estoppel, which is inherently factual in nature. Would you agree? Not legal. We're not talking about a legal claim. That's claim preclusion. Collateral estoppel ordinarily deals with facts. Now, how did you frame to the district court the factual issue or issues for which you sought issue preclusion? Collateral estoppel. How did you frame it? We framed it, Your Honor, as a finding in the identical Richards case. Where is the finding? I have looked at the verdict slip, which I suppose we could also refer to as special interrogatories, although they're very broad. Right. What are you relying upon that happened in the Smith trial? The finding in the Smith trial was that A&S Realty, Sidney Katz, was negligent in that they failed to adequately How is negligence a factual issue? That's a broad legal claim, isn't it? Which relies upon a whole series of factual determinations. We can call it a finding that they breached their duty of care with respect to the plaintiff by not adequately maintaining the building. That is a finding on a claim or on an issue that was necessary for the final judgment. And Judge Gomez found exactly that in his first order at the appendix number eight. Here there was no dispute the underlying issue, whether A&S Realty was negligent, is essentially identical to the claim of negligence litigated in this case. So Judge Gomez found that, that they're identical issues. He also found that the issue was actually litigated and that it was essential to the final judgment. So I believe if you're going to apply abuse of discretion standard, at that stage he's made the basic fundamental findings. You're talking about the May 8th determination? Correct. It's at 8. And you're saying that's what makes this different than Ortiz? You're not suggesting Ortiz is limited just to qualified immunity cases? No. But I'm suggesting Ortiz is limited to cases where a fuller fact or where the issue turns on whether there was sufficient evidence or a factual dispute precluding summary judgment and necessitating a trial on the merits. Why doesn't the subsequent opinion, the August 1 opinion of Judge Gomez, trump the May 8th opinion to the extent you can say, as I assume you are, that there is some inconsistency between the two? You're correct that he says in the May 8th decision that the general causation issue in Smith and in this case R.I.D. uses the word identical. But he subsequently says, I believe it's in the August 1 opinion, that it's probably going to be necessary for the plaintiffs to offer evidence of general causation in the subsequent trial, right? Did he say that? He did say that. What's wrong with that? If I can back up a little bit and I'll answer your question. The second opinion, after he had denied post-trial motions, does not refer at all or mention his findings on negligence, the breach of the duty of care. It only discusses general causation. And those are separate issues for claim conclusion purposes. Well, you can have overlap, though. You can have overlap, Your Honor, with respect to the general causation and specific causation. And as a practical matter, you probably are going to have it in a trial. Well, we're probably going to have to give some background on that. At least. Different levels of exposure. Absolutely. You're right. And they go to general causation. Right. But we would avoid a whole welter of evidence that would discuss why Mould causes these particular conditions. We could simply give the jury a brief summary of Mould and how it causes sinusitis and other respiratory problems. But, again, the standard is abuse of discretion. The fact that that could be done and maybe it would be easier to do it that way, and that we might even disagree with the way the judge handled the cases doesn't get you abuse of discretion. It just gets you a disagreement as to how the judge proceeded. It's the same trial judge. Judge Gomez tried Smith. He heard the evidence. He heard the expert testimony, which he, post-trial, post-Smith, decided may have some reliability issues to it. I'm not so sure, just to put in other words what it seems he was suggesting, I'm not so sure I want a second jury not to hear this again, not to hear this expert testify on general causation as it is so inelegantly characterized. Why isn't that inherent to the broad discretion of a trial judge, especially a trial judge that tried Smith and is now looking to try the next case? One, I think, because he tried Smith. He let the testimony in. And then he denied post-trial motions. So I think that is somewhat at odds with his analysis and his second opinion, that he has questions about the reliability of the evidence. Secondly, Your Honor, he had the record that existed in that case. Maybe he thought there ought to be a better record made in this next case. He had a record and ruled on the record denying the motions. The second thing I want to mention, and my time is up, it's very important that even if you find there's an abuse, there was no abuse of discretion on general causation, the issue of negligence or breach of the duty of care was identical as Judge Gomez found. We could have avoided a trial on that issue, which was a major, the issue that the jury found on, they found no negligence. That issue could not, would not have been tried. And we would not have got into whether the defendant breached his duty of care, what it did or didn't do. And there was absolutely no reason to deny that motion, nor does he articulate any reason to deny collateral estoppel on the issue of breach of the duty of care. I understand on general causation we can have, we can discuss whether it would overlap with specific. But on the issue of breach of the duty of care, Judge Gomez said it was identical, doesn't mention it in his second order, and articulates absolutely no reason why he wouldn't apply it in our case, which is an identical case that was severed before trial. Would you agree with my characterization that Judge Gomez strongly expressed in the May 8th ruling his concerns about the reliability of the expert testimony? Yes, I agree, but not with respect to negligence, with respect to causation. His second order doesn't discuss negligence. It pretends that issue is. You mean breach? Breach. I'm using negligence in the broader term. But breach of the duty of care. If we consider negligence a claim that encompasses causation, that is breach of the duty of care. Well, let, I mean, if that's the case, if I'm a trial judge and I'm concerned about the reliability of expert testimony that I saw unfold and that is likely to be repeated in a subsequent trial. And numerous. And maybe, yeah, maybe numerous subsequent trials, or maybe all, what is it, 29 plaintiffs in a consolidated trial, as the case may be. If we are to take seriously the admonition in Parkland-Hosier that where the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel. I mean, isn't that quintessentially the discretion, a discretionary call by a trial judge which is looking to fairness, which is precisely what Parkland-Hosier asks us to do? It is, and he only addressed the fairness issue that was set forth in Parkland-Hosier with respect to general causation, not with respect to breach of duty of care. I'm a little puzzled as to why these cases weren't tried together. I can't figure that out. You know. It's very strange. Were they severed by the court or did a party, one of the parties? They were severed by the court. They were consolidated for purposes of discovery only, weren't they? They were consolidated for purposes of discovery, separately filed, and severed. The plaintiff in Smith had a different attorney. That may be the reason. We didn't ask for severance, and I don't know. They were identical cases. They were all coworkers, and they were carbon copies of each other. And none of the concerns for not granting non-mutual offensive collateral estoppel were present. We weren't sandbagging and waiting for one trial to be over. The defendant didn't anticipate other trials. It had a full and fair opportunity to litigate. There were no procedural defenses available. In our case, they weren't available in the other case. None of those reasons for not granting non-mutual offensive collateral estoppel were present here, nor did Judge Gomez point to any of them. They didn't exist. Mr. Coliani, am I saying that correctly? Coliani, yes, sir. Thank you very much. Thank you. Thank you. Good morning, Your Honors. Morning. My name is Robert King, and I represent Mr. Sidney Cates and A&S Realty. If I might, I'd like to start at the last question that Your Honors asked, and that was with respect to the consolidation. The court consolidated the cases on my motion, and the consolidation was for all purposes. It wasn't just for purposes of discovery alone. It was consolidation for all purposes, including trial. So did Judge Gomez do this sua sponte? Sua sponte. He separated the case. We were originally doing discovery in this case, and all of a sudden we had 33 plaintiffs, one of which was represented by Attorney Coliani. The judge decided sua sponte that he was going to try this one case, and I can surmise the reason for that. The reason for that, in my mind, was to try to force settlement in the other 30 cases, thinking that if we lost in that one case, we would be forced to settle the others. But at the point that he forced us to trial, the discovery had not been completed. The experts' reports had not been done. When we were forced to trial, he allowed two experts to testify, a general causation expert and a medical expert who was giving you your general damages, and you're supposed to give you specific damages. She was never even named, Dr. Weiner. He had never even been named by the Smith plaintiff. What about Thibodeau was the other? Thibodeau was the other one, James Thibodeau. He was the liability expert. Dr. Weiner was the medical expert. Dr. Weiner had never been named by the Smith plaintiff as an expert at all. There had never been any Rule 26 disclosures with respect to Mrs. Smith. There had never been an expert report provided. There had never been deposition taken of Dr. Weiner. The judge forced us to trial. So Weiner testified without deposition? Without deposition, Your Honor. He forced us to trial without us having done any of that. With respect to Thibodeau, we had his report because it was provided by the, I'm sorry, your client. I'm sorry, Barbara Richards. Barbara Richards plaintiff has provided his report. We've been trying to get his deposition. That had never been scheduled. We complained to the judge that we weren't able to get the deposition of Dr. Thibodeau. The judge instead still forced us to trial. So we've got two major witnesses, one who purports to testify to the general well-being that this mold can possibly cause symptoms without ever having examined the Smith plaintiff. And the judge allowed him to testify without benefit of report, without benefit of us ever having been able to take a deposition of this doctor. Let's try to put this in the context now of what the standard of review is here and what the nature of offensive, non-mutual offensive collateral estoppel is. Are you arguing those procedural shortcomings of the Smith case as suggesting the kind of unfairness that I just went to a bit ago? I am, I am, I am. He ruled that way. At my age, I am physically incapable to fast. That's precisely, precisely, precisely what I'm going to. We had made all of those objections to the judge in all of our motions, in the motion in opposition to the summary judgment in Richards. Rather than the judge facing the actual issues that were raised, he took a little sidestep on this, but he did still consider the park lane factors of fairness of the defendant. And in his view, the fairness of the defendant, he looked at a quote-unquote Daubert type of standard, and he said, well, the expert testimony of Mr. Thibodeau. But he lauded under Daubert, and that's what is so puzzling to me about this. He clearly had some concerns about the expert, but there's no preclusion of the expert's testimony under Daubert. Right. So whatever the concerns were, isn't that a jury question, not a Daubert question? Right, right. And so what he did was, he says, there are issues here that I'm uncomfortable with. So exercise discretion, he said, I'm uncomfortable with granting non-mutual, offensive collateral estoppel in this case. And he said, I'm uncomfortable with it because of the testimony that I allowed into the first case, which made it, he didn't say the word, but made it unfair. Was there a motion for a new trial after this verdict came out? No. After the Smith verdict? After the Smith verdict. The Smith verdict, yes, everything is there. Including remitter. Including remitter. That was denied. Every motion under the side. So if you're, okay. I'm trying to see what that would look like. So you have all these concerns about the expert, assuming that it somehow gets past Daubert in terms of methodology, and so it's not a technical, scientific Daubert problem. But you've got concerns about the testimony. But you don't grant a new trial. There comes a point, isn't there, at which the Seventh Amendment jury right kicks in? Oh, this is even worse than that. Yeah, you're absolutely right, because we had even problems in the Smith case with the jurors and by juror bias. Yeah, but, again, there's no new trial granted. I mean, it's in the breeze that there's a question with the bias of the jury, but the verdict stands. Exactly. So, but if I might now go in reverse. Let me stop you right there, though, before you go and take up on the last comment you made concerning the Smith trial. You don't really need to go there, do you, in terms of juror bias? That sort of collateral attack on the first trial is unnecessary to you here. That's just showing additional reasons why. Yeah, but that's a much tougher burden for you under the law. It only goes to show that there are factors to be considered to go to whether or not collateral stoppage should be applied and whether there was fairness to the defendant applying it. Well, if the court identifies it, but the district court didn't opine on juror bias, did it? No, they did not. So, I mean, if you were to want us to rely on that, what you really ought to be asking us to do is wait until the Smith appeal, which is pending, is determined and see how the bias of the jury plays out in that. No, because he's never ruled on that, even up to the Smith trial. All right. So we'd never even get there. So what I'm really saying is there were a lot of factors to be considered which went into the Park Lane type of factors, where you're trying to determine whether or not it is fair to the defendant to apply offensive collateral estoppel. And I'm saying that there were a lot of considerations in the Smith case. This was not a purely, and here's where I'm flipping around, a purely legal issue. It wasn't that neat set of legal issues where you're talking about principles where the judge can sit back and make a determination based upon undisputed fact. Well, then you're probably getting into claim preclusion as opposed to issue preclusion. No. Claim preclusion is quite different. And the rules under claim preclusion would be quite different. When I say claim preclusion, that's a general idea, and we're also talking about res judicata. If we're talking about res judicata, we have the same parties, the same issues. There's no real factual determination to be made. It's more of a purely legal issue that we're talking about. That was my point in questions to your adversary earlier. Collateral estoppel is about facts, isn't it? Yes, it is. Absolutely. It's about facts. And it's about whether it's fair to apply the facts to a non-litigating party and bind a litigating party. And the question then becomes, under the facts that you have, is it fair to bind them? And the facts that we have in this case say it's not. This is a highly factual determination, and it's the kind of determination when the judge talked about in Ortiz. In Ortiz, the judges said, well, if the denial of the motion for summary judgment was based upon the judge's determination that there were facts in dispute, then in order for you to preserve this argument, you must first have made your Rule 50A motion, Rule 50B motion. You must have done everything else to preserve it. Here, these plaintiffs did nothing. So you're arguing no jurisdiction. Yes, you don't. As I read Ortiz, Ortiz sets out, and granted, Ortiz does a lot in dicta, and it is a great case to read, and I had fun reading it. But it was very hard to understand. You had fun reading Ortiz? Yes. Judge, you've got to understand something. I've got plenty of time on my hands. Pardon me? I've got plenty of time on my hands. I guess you do. It's a very difficult decision to understand because you start out with they're talking about whether or not sovereign immunity, not sovereign immunity, but whether you're going to have the case precluded by claims of immunity. And then you arrive at their exceptions to the rule, and you're looking to see how far the exceptions are going to go before they actually eat up the rule. And then when they get to the issue of purely legal issue, then they define that, and once they define it, you start to understand that what they're really telling you is that if you can look at this in a vacuum and consider no facts at all, no facts at all are in dispute, that's a purely legal issue. And that's one where no Rule 50A motion is required, no Rule 50B motion is required, there is no waiver, and the Court of Appeals can hear. Where it's a highly factual determination, such as the one that we have here, and there has been no motions, no jurisdiction. And I think that's where we sit today. Okay. Thank you, Mr. King. Mr. Koyani? Thank you. To briefly address the jurisdictional issue again, there are no factual issues that were developed at trial that in any way affected the Court's ruling on the collateral estoppel motion. This isn't a case where the judge ruled on the sufficiency of the evidence and then the jury was presented with a fuller record and then made a finding. We could not have brought a Rule 50B motion on the sufficiency of the evidence because the Court denied collateral estoppel. If you look at the cases prior to Ortiz that address this issue, and there's the Paveon v. Swift transportation case that we cite in our supplemental brief out of the Ninth Circuit, the Court says that claim preclusion issues or issue preclusion issues are not disputed factual issues that go to the jury. And therefore, the Court reviewed a denial of summary judgment on a claim preclusion issue. I just want to clarify briefly. You could find that Judge Gomez did not abuse his discretion as to general causation. But as to breach of the duty of care or negligence, as he refers to it in his first order, there is a finding that he made that the claims were essentially identical, were fully litigated, were necessary to the judgment. He doesn't address that again in his second order and doesn't, say, weigh any factors and then exercise his discretion. He simply addresses general causation. So you could affirm on general causation and still find that he abused his discretion in not granting our collateral estoppel partial summary judgment motion on the issue of breach of the duty of care. And that's really what the crux of our motion was about, because that would have saved us in the Court a tremendous amount of time and money trying the issue of liability. How long was the Smith case? How long was the trial? It lasted a little over a week. What about the trial here? The Smith case? No, this one. This one lasted a little over a week. Okay, both of them were about a week. Yeah. Is that right? You know, that argument has more force before the second trial about saving time. Before? The second trial. Right. Before the second trial. Which? The argument of efficiency. Right. And saving time and money and cost. Which we made before the second trial in moving for claim preclusion on the issue of negatives. And I agree. But it's not a situation where, briefly, where the fact of going to trial would have been the harm, and therefore our motion would have been immediately appealable, like this 11th Amendment immunity defense, because it's not reviewable because the damage has been done by actually going to trial. Not in this case. In this case, courts have said, yes, it may waste time that you would have saved by immediately appealing, but it's not. Collateral stop vote denials are not immediately appealable. They're reviewable after final judgment. Thank you. Okay, we'll take the matter under advisement. Very helpful argument. Thank you both. Thank you.